**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

| | |
|---|---|
| IHOP RESTAURANTS LLC, a Delaware limited-liability company; IHOP LEASING LLC, a Delaware limited-liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> PYRAMID OPERATING GROUP, INC., a New York corporation, <br><br> Defendant. | Case No. |

**VERIFIED COMPLAINT FOR BREACH OF CONTRACT, TRADEMARK
INFRINGEMENT, EJECTMENT, AND PRELIMINARY AND
<u>PERMANENT INJUNCTIVE RELIEF</u>**

Plaintiffs IHOP Restaurants LLC ("<u>IHOP Restaurants</u>") and IHOP Leasing LLC ("<u>IHOP Leasing</u>" and together with IHOP Restaurants, collectively, "<u>IHOP</u>"), by and through the undersigned counsel, and for their Verified Complaint against Defendant Pyramid Operating Group, Inc. ("<u>Pyramid</u>" or "<u>Defendant</u>"), allege as follows:

**INTRODUCTION AND NATURE OF THE ACTION**

1. This breach-of-contract, trademark-infringement, and ejectment action arises from the natural expiration of the franchise agreement and related agreements between IHOP and Defendant, and Defendant's subsequent material breaches of its post-termination obligations under the agreements and infringement of IHOP Restaurants' trademarks.

2. As set forth in further detail herein, upon expiration of the franchise agreement and related agreements, Defendant was required to cease operation of the franchised restaurant, vacate

the premises of the franchised restaurant and provide access to IHOP Leasing, and refrain from any further use of IHOP Restaurants' trademarks, trade secrets, and other intellectual property.

3. Despite the expiration of the franchise agreement and related agreements on April 30, 2025—which included termination of Defendant's license to use IHOP Restaurants' trademarks—Defendant has failed to cease operations or vacate the premises of the franchised restaurant, and continues to wrongfully operate the franchised restaurant, use IHOP Restaurants' trademarks, and cause IHOP irreparable harm. These significant breaches follow Defendant's prior uncured defaults under the franchise agreement, as well as defaults by certain affiliates under other franchise agreements and related agreements concerning additional IHOP® locations. As of the date of this Complaint, Defendant, its affiliates, and their guarantors owe IHOP more than $177,000 in past-due royalties, advertising fees, and other amounts due under the relevant franchise documents. Moreover, Defendant's continued unauthorized operation irreparably harms IHOP's brand and goodwill, as customers associate their negative experiences at Defendant's unauthorized location with IHOP's broader restaurant system.

4. With this action, IHOP seeks a preliminary and permanent injunction enjoining Defendant's unlawful actions, along with the issuance of a temporary-restraining order. Specifically, IHOP requests that the Court order Defendant to: (a) cease operating the franchised restaurant and surrender the premises of and leased equipment in the franchised restaurant to IHOP; and (b) deliver and surrender up to IHOP any and all manuals, the Operations Bulletins, instruction sheets, forms, marks, devices, training materials, confidential communications, trademarks, as well as any physical objects bearing or containing IHOP's trademarks; and (c) to immediately cease use of any such trademarks or trade secrets.

**PARTIES**

5.      Plaintiff IHOP Restaurant is a Delaware limited-liability company. The sole member of IHOP is IHOP Funding LLC, a Delaware limited-liability company. The sole member of IHOP Funding LLC is IHOP SPV Guarantor LLC, a Delaware limited-liability company. The sole member of IHOP SPV Guarantor LLC is International House of Pancakes, LLC, a Delaware limited-liability company. The sole member of International House of Pancakes, LLC is Dine Brands Global, Inc., a Delaware corporation with its principal place of business in Pasadena, California. Thus, for purposes of 29 U.S.C. § 1332, Plaintiff IHOP Restaurants is a citizen of Delaware and California.

6.      Plaintiff IHOP Leasing is a Delaware limited-liability company. The sole member of IHOP Leasing is IHOP Funding LLC, a Delaware limited-liability company. The sole member of IHOP Funding LLC is IHOP SPV Guarantor LLC, a Delaware limited-liability company. The sole member of IHOP SPV Guarantor LLC is International House of Pancakes, LLC, a Delaware limited-liability company. The sole member of International House of Pancakes, LLC is Dine Brands Global, Inc., a Delaware corporation with its principal place of business in Pasadena, California. Thus, for purposes of 29 U.S.C. § 1332, Plaintiff IHOP Leasing is a citizen of Delaware and California.

7.      Defendant Pyramid is a New York corporation with its principal place of business in Pennsylvania. Thus, for purposes of 29 U.S.C. § 1332, Defendant Pyramid is a citizen of New York and Pennsylvania.

**JURISDICTION AND VENUE**

8.      This Court has original subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 1367 because it is a civil action involving claims arising under the laws of the

United States relating to trademarks and all other claims in the action are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

9. This Court also has original subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to IHOP's claims occurred in this judicial district.

11. Defendant is subject to personal jurisdiction in this Court because Defendant: (1) is domiciled in Pennsylvania; (2) entered into a contract in Pennsylvania; (3) entered into a contract that was to be performed in Pennsylvania; and (4) otherwise has the necessary minimum contacts with Pennsylvania.

## FACTS COMMON TO ALL COUNTS

### IHOP's Business and Marks

12. IHOP Restaurants is a franchisor-side entity of nationally recognized restaurants known as IHOP®, or International House of Pancakes, specializing in American breakfast and brunch foods.

13. IHOP Restaurants has adopted and used in interstate commerce certain trademarks (the "Marks"[1]), which have been registered with the United States Patent and Trademark Office in connection with the operation of IHOP restaurants and licensed to authorized franchisees.

14. IHOP and its affiliates and franchisees have continuously used the IHOP® name for decades and consistently developed goodwill through their use. IHOP and its authorized franchisees have used and continue to use the Marks to identify their goods and services in

---

[1] A list of the Marks is attached hereto as **Exhibit A**.

interstate commerce in connection with IHOP restaurants.  The Marks are intended to distinguish activities in this regard from those who are not so authorized.

15.     IHOP Restaurants spends substantial sums for advertising and promotion of the Marks.  IHOP has prominently displayed the Marks on outdoor signs, Internet websites, television advertising, social media, and other advertising material throughout the Americas, the Middle East, and South Asia.  IHOP has acquired a valuable reputation and goodwill among the public as a result of such customer association with the Marks.  The Marks have developed a secondary meaning associating them with IHOP Restaurants and authorized franchisees.  The Marks are distinctive, widely recognized, and engender a substantial amount of goodwill, on which IHOP's franchisees depend.

16.     Pursuant to individual franchise agreements, IHOP and/or its affiliates grant franchisees the license to use IHOP Restaurants' Marks in their operation of IHOP® restaurants at locations specified in their franchise agreements and on the terms set forth in the franchise agreements, including, but not limited to, a defined period of time.  In exchange for these and other benefits and services, IHOP receives payments from its franchisees, principally in the form of royalties.

**The Franchise Documents**

17.     On or about September 6, 2005, International House of Pancakes, Inc., entered into a Franchise Agreement (the "Franchise Agreement") with Defendant for the IHOP restaurant located at 136 Easton Road, Warrington, PA 18976 (the "Franchised Restaurant" or "IHOP #0586").

18.     Plaintiff IHOP Restaurants is the successor-in-interest to International House of Pancakes, Inc., under the Franchise Agreement.  A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit B** and is fully incorporated by reference.

19. At the time Defendant entered into the Franchise Agreement, the premises of the Franchised Restaurant were the subject of a Sublease dated January 2, 2000, as amended, between IHOP Properties, Inc., and Global Restaurant Group, Inc. (the "Sublease").

20. Plaintiff IHOP Leasing is the successor-in-interest to IHOP Properties, Inc. under the Sublease, and Defendant is the successor-in-interest to Global Restaurant Group, Inc. A true and correct copy of the Sublease, as amended, is attached hereto as **Exhibit C** and is fully incorporated by reference.

21. At the time Defendant entered into the Franchise Agreement, the equipment in the Franchised Restaurant was the subject of an Equipment Lease dated January 2, 2000, between IHOP Restaurants, Inc., and Global Restaurant Group, Inc. (the "Equipment Lease," and, together with the Franchise Agreement and Sublease, the "Franchise Documents"). A true and correct copy of the Equipment Lease is attached hereto as **Exhibit D** and is fully incorporated by reference.

22. Plaintiff IHOP Restaurants is the successor-in-interest to IHOP Restaurants, Inc. under the Equipment Lease, and Defendant, through a Consent to Assignment dated September 6, 2005, is the successor-in-interest to Global Restaurant Group, Inc. as to the Sublease and Equipment Lease.

23. Under the Franchise Agreement, IHOP Restaurants allowed Defendant to operate the Franchised Restaurant using the Marks and system for the Initial Term, which, pursuant to Section 3.01 of the Franchise Agreement, was set to expire on December 31, 2024. *See* Ex. A.

24. Similarly, in the Sublease and Equipment Lease, IHOP allowed Defendant to occupy the premises of IHOP #0586 and possess and use certain equipment for a defined term. *See* Exs. C and D.

25. The Sublease provided that it "may be terminated, at the option of Sublandlord, in the event of any termination, for any cause, of the Franchise Agreement (as defined in Section 4.1 below)." *See* Ex. C, § 1.3.

26. Similarly, the Equipment Lease provided that "[t]he term of this Lease shall commence on the date of possession by Lessee of the IHOP Restaurant and continue for a term coincident with that of the Sublease executed concurrently herewith." Ex. D, § III.

### The Parties' Extensions of the Franchise Documents

27. As the expiration date of the Franchise Agreement approached, Defendant initially expressed interest in renewing the Franchise Agreement by submitting a notice of intent to renew on August 28, 2024.

28. To facilitate a potential renewal, the parties entered into a Short Term Extension Agreement on December 23, 2024, which extended the term of the Franchise Documents through December 31, 2024 (the "First Extension"). A true and correct copy of the First Extension is attached hereto as **Exhibit E** and is fully incorporated by reference.

29. Subsequently, on February 12, 2025, to allow additional time for renewal discussions, the parties entered into a second Short Term Extension Agreement, extending the term of the Franchise Documents through April 30, 2025 (the "Second Extension"). A true and correct copy of the Second Extension is attached hereto as **Exhibit F** and is fully incorporated by reference.

### The Expiration of the Franchise Documents Following Defendant's Failure to Renew

30. Under the Franchise Agreement, renewal is not automatic but instead "is conditioned upon [Defendant's] fulfillment of [numerous] conditions precedent." Ex. B, § 3.06.

31. Specifically, Section 3.06(a) provides:

7

> At the time [Defendant] delivers its Renewal Notice to Franchisor and at all times from such notification to the time of the commencement of the term of the Renewal Agreement, [Defendant] shall have fully performed all of its obligations under this Agreement and under all other agreements which may then be in effect between [Defendant] and [IHOP] or its Affiliate, including any sublease, equipment lease, and promissory note, and each [Defendant]-Affiliate shall have fully performed all of its obligations under each and every agreement between such [Defendant]-Affiliate and [IHOP] or its Affiliate.

32. Defendant failed to satisfy this condition precedent for renewal for the following reasons: (i) it failed to pay royalties and advertising fees totaling $12,393.92 due under the Franchise Agreement; (ii) its affiliates, Exton Operating Group, Inc. ("Exton"), and New Castle Operating Group, Inc. failed to pay fees owed under their respective franchise agreements in the amounts of $28,408.36 and $14,928.03; and (iii) Exton was insolvent, in violation of Section 12.02(1) of its franchise agreement, as evidenced by its filing of a Chapter 11 Voluntary Petition for bankruptcy on March 24, 2025.

33. Accordingly, on April 25, 2025, IHOP sent Defendant a Notice of Intent Not to Renew (the "April 25 Letter"), reiterating the conditions precedent to renewal, outlining Defendant's failure to satisfy those conditions for the reasons set forth above, and confirming that IHOP would not renew the Franchise Agreement. A true and correct copy of the April 25 Letter is attached hereto as **Exhibit G** and is fully incorporated by reference.

### Defendant's Post-Termination Obligations under the Franchise Documents

34. Among other obligations under the Franchise Documents, and upon the expiration or termination of the Franchise Agreement, Defendant was required to:

> [D]eliver and surrender up to Franchisor or its Affiliate any and all manuals, Bulletins, instruction sheets, forms, marks, devices, Trademarks, and the possession of any physical objects bearing or containing any of said Trademarks, and shall not thereafter use any of the same or any such Trademarks or Trade Secrets.

Ex. B, ¶ 8.09.

8

35. As set forth in further detail herein, the Franchise Agreement imposed additional obligations on Defendant upon expiration, including the following mandates:

- "Franchisee shall forthwith discontinue the use of Franchisor's Trademarks";

- "[Franchisee] shall not thereafter operate or do business under any name or in any manner that might tend to give the general public the impression that it is either directly or indirectly associated, affiliated, franchised or licensed by or related to, the IHOP Restaurant system";

- "[Franchisee] shall not, either directly or indirectly, use any name, logotype, symbol or format confusingly similar to the IHOP Trademarks or formats, at either the Franchised Location, the Franchised Restaurant or any other location not then Franchised to Franchisee by Franchisor";

- "Franchisee shall not, either directly or indirectly, for any purpose whatsoever, use any of Franchisor's Trade Secrets, procedures, techniques or materials acquired by Franchisee by virtue of the relationship created by this Franchise Agreement, including, (i) recipes, formulae and descriptions of food products; (ii) the Operations Bulletins and all manuals, Bulletins, instruction sheets, and supplements thereto and shall return same to Franchisor; (iii) all forms, advertising matter, marks, devices, insignias, slogans and designs used from time to time in connection with IHOP Restaurants; and (iv) all copyrights, Trademarks and patents now or hereafter applied for or granted in connection with the operation of IHOP Restaurants."

*Id.*, ¶ 16.02(a).

36. Similarly, under the Equipment Lease, through which Defendant leased the Franchised Restaurant's fixtures, equipment, and expendables (collectively, "Personal Property") from IHOP Restaurants, Defendant was obligated upon expiration to "promptly return the Personal Property to [IHOP] in as good condition as when received, reasonable wear and tear excepted, and in the quantities" set forth in the Equipment Lease. Ex. D, § V.

37. For the Sublease, through which Defendant subleased the premises of the Franchised Restaurant from IHOP Leasing, Defendant's continued occupancy of the Franchised Restaurant as a holdover tenant violated the Sublease, triggering IHOP Leasing's remedies thereunder, including, but not limited to, its right to:

>Reenter the Premises with or without process of law and take possession of the same and of all equipment and fixtures of Subtenant therein, and expel or remove Subtenant and all other parties occupying the Premises, using such force as may be reasonably necessary to do so, without being liable for any prosecution for such reentry or for the use of such force.

Ex. C, § 8.1(a).

### IHOP's Confirmation of Expiration of the Franchise Documents

38. On June 24, 2025, IHOP sent Defendant a Demand for Compliance with Post-Expiration Obligations under Franchise Agreement ("Expiration Notice and Demand"), in which IHOP (1) confirmed the natural expiration of the Franchise Documents on April 30, 2025, and (2) demanded Defendant comply with its post-termination obligations under the Franchise Documents. A true and correct copy of the Expiration Notice and Demand is attached hereto as **Exhibit H** and is fully incorporated by reference.

39. Following receipt of the Expiration Notice and Demand, Defendant did not dispute or otherwise challenge the expiration of the Franchise Documents as of April 30, 2025, and failed to comply with the demands stated therein.

### Defendant's Infringement of the Marks, Violation of its Post-Termination Obligations under the Franchise Agreement, and the Irreparable Harm to IHOP

40. Despite IHOP's Expiration Notice and Demand, Defendant has failed to comply with and satisfy any of its post-termination obligations under the Franchise Documents and continues to operate the Franchised Restaurant while using IHOP's Marks, to occupy and use the premises of the Franchised Restaurant, and to possess and use the leased Personal Property.

41. Defendant continues to use IHOP Restaurants' Marks in connection with the operation of the Franchised Restaurant, continues to market and promote the Franchised Restaurant through the Marks, continues to hold the Franchised Restaurant out to the public as an

authorized IHOP restaurant, and continues to pass off the Franchised Restaurant and the goods and services offered as being authorized by IHOP when they are not.

42. Defendant's use of the Marks is without license or consent of IHOP and has caused, and is likely to cause, mistake, confusion, or deception in the minds of the public as to the source and sponsorship of the IHOP Marks at IHOP #0586.

43. Authorized IHOP restaurants and Defendant offer identical or substantially identical goods and services through their restaurants. As such, the goods and services Defendant provides using the Marks are offered to the same class of consumers as those who patronize authorized IHOP restaurants. Upon seeing the familiar and well-known Marks through Defendant's unauthorized use of the Marks, consumers will be deceived into concluding the Franchised Restaurant bears the Marks pursuant to IHOP's permission.

44. So long as Defendant continues to use the Marks in connection with the Franchised Restaurant, consumers have no practical way of knowing the Franchised Restaurant is no longer operating pursuant to agreement with IHOP. As a result, any consumer dissatisfaction or negative perceptions will be attributed to all franchised restaurants. Further, IHOP is no longer able to control and monitor the use of its Marks through verifying compliance with IHOP's brand-protection standards.

45. As an example, in the months preceding the expiration of the Franchise Documents, and in the months thereafter, multiple customers submitted complaints to IHOP and/or its affiliates regarding their experience at the Franchised Restaurant. The customers reported, among other things, that:

- "[T]his is my last time patronizing your establishment. . . . I will never return!"

- "I . . . was extremely disappointed ihop use[d] to be my go[-]to spot but now I'm not so sure it's changed so much the last few years."

11

- "It was a terrible experience."

- "IHOP always known for great pancakes misses the mark. . . . Over all maybe the worst breakfast experience we have had. . . . It is safe to say that whomever the franchisee is not willing to spend the money to upgrade the establishment or care for it properly. I would say that the IHOP standard is nonexistent. . . . We will never return to an IHOP. . . . One might ask [w]hy would I eat at IHOP? Just food for thought!!"

46. As these comments reflect, prior to and after expiration, customers associated their experience at the Franchised Restaurant with all IHOP® franchised restaurants. With Defendant's unauthorized operation and use of IHOP Restaurants' Marks, customers have no ability now to differentiate between authorized IHOP® restaurants and Defendant or understand that IHOP no longer authorizes Defendant to use IHOP Restaurants' Marks in operating the Franchised Restaurant. Thus, customers will improperly and irreparably continue to associate any perceived negative experience at the Franchised Restaurant with all IHOP® franchised restaurants.

47. Defendant has received actual notice of its violation and infringement of the Marks, and has constructive notice of IHOP Restaurants' rights in the Marks and the registrations thereof pursuant to 15 U.S.C. § 1072. Defendant's continued infringement is willful, malicious, fraudulent, and deliberate.

48. Defendant has materially breached the Franchise Agreement and has not cured (and cannot cure) the material breaches, and the expiration of the Franchise Agreement on April 30, 2025 ended any rights Defendant had to possess and use the property covered by the Franchise Agreement.

49. IHOP has at all times complied with and fully performed its obligations under the Franchise Documents.

**COUNT I**
**(Breach of Contract - Franchise Agreement)**

50. IHOP incorporates paragraphs 1 through 49 as if fully set forth herein.

51. The Franchise Agreement is a duly executed, valid and binding contract, supported by sufficient consideration, between IHOP Restaurants and Defendant.

52. IHOP Restaurants has performed, or stood willing to perform, all or substantially all of the obligations required of it under the Franchise Agreement, or IHOP Restaurants was otherwise excused from such performance.

53. All conditions required by the Franchise Agreement for Defendant's performance thereunder have occurred or were excused.

54. Defendant has materially breached the Franchise Agreement by failing to comply with its post-termination obligations, including, without limitation:

- Ceasing to operate the Franchised Restaurant pursuant to Paragraph 8.09 of the Franchise Agreement;
- Ceasing use of IHOP's Marks; and
- Satisfying its obligations under Paragraph 16.02 of the Franchise Agreement.

55. As a direct and proximate result of Defendant's material breaches of the Franchise Agreement, IHOP Restaurants has been deprived of the benefits to which it is entitled under the Franchise Agreement and has suffered, and will continue to suffer, damages and irreparable harm, including damages to its business reputation and goodwill.

56. Monetary damages, however, are an inadequate remedy at law for Defendant's material breaches, and IHOP Restaurants therefore is entitled to injunctive relief and/or specific performance, in addition to damages.

## COUNT II
### (Trademark Infringement - 15 U.S.C. § 1114 of the Lanham Act)

57. IHOP incorporates paragraphs 1 through 49 as if fully set forth herein.

58. Following the expiration of the Franchise Agreement on April 30, 2025, Defendant has continued, without IHOP's consent, to use the Marks in commerce or in connection with the sale, offering of sale, distribution, and/or advertising of goods and services. Defendant has done so by, among other things, continuing to operate the Franchised Restaurant and using the Marks on signage and menus. Such use of the Marks, without IHOP Restaurants' permission or authority, is likely to cause confusion or mistake, or to deceive the public as to Defendant's status as an IHOP franchisee and/or approval or authorization by IHOP, and, upon information and belief, is so intended by Defendant.

59. The foregoing conduct is likely to confuse the public into believing the Defendant's continued use of the Marks is authorized by IHOP and that Defendant's continued operation of the Franchised Restaurant and continued display of IHOP Restaurants' Marks at the Franchised Restaurant, at the same location as a formerly authorized IHOP franchisee, is still authorized by IHOP.

60. IHOP Restaurants has no plain, speedy, and adequate remedy at law and is suffering irreparable injury and harm as a result of the foregoing acts of trademark infringement by Defendant, including damages to its business reputation and goodwill, and such damage is difficult if not impossible to quantify. IHOP is entitled to an injunction pursuant to 15 U.S.C. § 1116(a). Unless Defendant is enjoined, Defendant will continue to infringe the Marks and cause irreparable injury to IHOP from deprivation of the goodwill associated with the Marks, as well as likely to cause confusion among customers and vendors that will result in a loss of customers, reputation, goodwill, revenue, and profits, diminished marketing and advertising, and trademark dilution.

61. IHOP is also entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).

## COUNT III
### (Unfair Competition - 15 U.S.C. § 1125(a) of the Lanham Act)

62. IHOP incorporates paragraphs 1 through 49 as if fully set forth herein.

63. Defendant has, without authorization, used in commerce the Marks, and/or has made misleading descriptions of fact, or misleading representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the connection or association of Defendant with IHOP, and/or as to the sponsorship or approval of Defendant's goods and services, or commercial activities.

64. Defendant's acts have been committed with knowledge of IHOP Restaurants' exclusive rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

65. The foregoing conduct is likely to confuse the public into believing the Defendant's continued operation of the Franchised Restaurant and continued use of IHOP Restaurants' Marks at the Franchised Restaurant, at the same location as a formerly authorized IHOP franchise, is authorized by IHOP, or that Defendant's franchise is connected with IHOP, in violation of 15 U.S.C. § 1125(a).

66. IHOP has no plain, speedy, and adequate remedy at law and is suffering irreparable injury and harm as a result of the foregoing acts of trademark infringement by Defendant, including damages to its business reputation and goodwill, and such damage is difficult if not impossible to quantify. IHOP is entitled to an injunction pursuant to 15 U.S.C. § 1116(a). Unless Defendant is enjoined, Defendant will continue to infringe the Marks and cause irreparable injury to IHOP from deprivation of the goodwill associated with the Marks, as well as likely to cause confusion among

customers and vendors that will result in a loss of customers, reputation, goodwill, revenue, and profits, diminished marketing and advertising, and trademark dilution.

67. IHOP is also entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).

**COUNT IV**
**(Ejectment)**

68. IHOP incorporates paragraphs 1 through 49 as if fully set forth herein.

69. As the holder of the leasehold interest in the Franchised Restaurant's premises, IHOP Leasing has a legal and equitable interest in the property.

70. Prior to entering into the Sublease with Defendant, IHOP Leasing had actual or constructive possession of the Franchised Restaurant's premises.

71. Under the terms of the Sublease, IHOP Leasing subleased the Franchised Restaurant's premises to Defendant, and Defendant took possession of the premises.

72. The Sublease expired on April 30, 2025, at which time Defendant's sub-tenancy terminated and it became obligated to surrender possession of the premises to IHOP Leasing.

73. Defendant has refused to surrender the Franchised Restaurant's premises to IHOP Leasing and is occupying the Franchised Restaurant's premises without legal right and is a trespasser.

74. By failing to relinquish possession, Defendant is unlawfully holding over its tenancy and is unlawfully in possession of the Franchised Restaurant's premises. IHOP is entitled to an order ejecting Defendant from the Franchised Restaurant's premises and directing Defendant to surrender possession of the Franchised Restaurant to IHOP.

75.  As a result of Defendant's actions, IHOP Leasing has suffered and will continue to suffer damages and irreparable injury, including, but not limited to, the inability to exploit, use, and enjoy its leasehold interest in the Franchised Restaurant's premises.

## PRAYER FOR RELIEF

WHEREFORE, IHOP prays that the Court enter judgment in its favor and against Defendant for:

a. A preliminary and permanent injunction, along with the issuance of a temporary-restraining order, against Defendant, and its officers, agents, servants, employees, attorneys, and other persons acting in concert with Defendant:

    (i) enjoining Defendant from operating the Franchised Restaurant;

    (ii) enjoining Defendant from using the Marks or any trademark, service mark, logo, or trade name that is confusingly similar to IHOP Restaurants' trademarks and trade name;

    (iii) enjoining Defendant from otherwise infringing IHOP Restaurants' trademarks and tradenames or using any similar designation, alone or in combination with any other component;

    (iv) enjoining Defendant from passing off any of its goods or services as those of IHOP Restaurants' authorized franchisees;

    (v) enjoining Defendant from causing likelihood of confusion or misunderstanding as to the source or sponsorship of its business, goods, or services;

    (vi) enjoining Defendant from causing likelihood of confusion or misunderstanding as to its connection with IHOP and IHOP's franchisees or any of IHOP's goods or services; and

    (vii) enjoining Defendant from unfairly competing with IHOP or IHOP's franchisees, in any manner;

b. A writ of ejectment and possession entitling IHOP to possession of the premises of the Franchised Restaurant and to physically remove Defendant from such premises;

c. An order requiring Defendant to file with the Court and to serve upon IHOP's counsel within ten (10) calendar days of entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which Defendant has complied with such injunction or order;

d.   The costs and expenses incurred in bringing this action, including IHOP's reasonable attorneys' fees;

e.   Pre- and post-judgment interest; and

f.   Such other and further relief as the Court deems appropriate.

Respectfully submitted,

By: */s/ Connor P. Sease*
    Robert M. Linn (PA I.D. No. 44777)
    Connor P. Sease (PA I.D. No. 327326)

DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue, Floor 5
Pittsburgh, PA 15222
Tel: (412) 297-4900
Fax: (412) 209-1975
robert.linn@dentons.com
connor.sease@dentons.com

Joel D. Siegel, *to be admitted pro hac vice*
Norman M. Aspis, *to be admitted pro hac vice*
DENTONS US LLP
601 S. Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
joel.siegel@dentons.com
norman.aspis@dentons.com

Brian P. Baggott, *to be admitted pro hac vice*
Michael Pappas, *to be admitted pro hac vice*
DENTONS US LLP
4520 Main Street, Ste. 1100
Kansas City, Missouri 64108
Telephone: (816) 460-2654
Facsimile: (816) 531-7545
brian.baggott@dentons.com
michael.pappas@dentons.com

*ATTORNEYS FOR PLAINTIFFS IHOP RESTAURANTS LLC and IHOP LEASING LLC*

Dated:  July 25, 2025

## VERIFICATION

I, Nicole Durham-Mallory, am Vice President, Sales Administration, for Dine Brands Global, Inc., which is the ultimate parent company of Plaintiffs IHOP Restaurants LLC and IHOP Leasing LLC. I have read the foregoing Verified Complaint and, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Nicole Durham-Mallory

130765008